RECEIVED
JUN 06 2025
RICHARD W. NAGEL, CLERK OF COURT
COLUMBUS, OHIO

# FOR THE SOUTHERN DISTRICT OF OHIO

# UNITED STATES DISTRICT COURT

# WESTERN DIVISION AT COLUMBUS

**DUSTIN M. KINNETT, §**

**Plaintiff, §**

2:25 CV 0631

**§ CASE NO. ________________**

JUDGE SARGUS
MAGISTRATE JUDGE DEAVERS

**§ VERIFIED COMPLAINT FOR**

**v. § DAMAGES, DECLARATORY AND**

**§ INJUNCTIVE RELIEF**

**JURY TRIAL DEMAND**

****INSTITUTIONAL DEFENDANTS:****

**STATE OF OHIO; §**

**SHELBY COUNTY SHERIFF'S OFFICE; §**

**VERSAILLES POLICE DEPARTMENT; §**

**SHELBY COUNTY PUBLIC DEFENDER'S OFFICE; §**

**VERSAILLES EXEMPTED SCHOOLS; §**

**OHIO BAR ASSOCIATION; §**

**DARKE COUNTY DEPARTMENT OF JOB §**

**AND FAMILY SERVICES; §**

**SHELBY COUNTY DEPARTMENT OF JOB §**

**AND FAMILY SERVICES; §**

**SHELBY COUNTY COURT OF COMMON PLEAS; §**

**DARKE COUNTY MUNICIPAL COURT; §**

**SHELBY COUNTY CLERK OF COURTS; §**

**SHELBY COUNTY PROSECUTOR'S OFFICE; §**

**SHELBY COUNTY COMMISSIONERS; §**

**DARKE COUNTY COMMISSIONERS; §**

****JUDICIAL DEFENDANTS (each in their official and individual capacities):****

**JUDGE JULIE MONNIN; § JURY TRIAL DEMANDED**

**JAMES F. STEVENSON; §**

**TRAVIS L. FLIEHMAN; §**

**GARY J. CARTER; §**

**KRISTINA M. MORRIS; §**

****LAW ENFORCEMENT DEFENDANTS (each in their official and individual capacities):****

**JOSH BOWLIN, Chief of Police, §**

**Versailles Police Department; §**

**NATHAN NOLTE, Police Officer, §**

**Versailles Police Department; §**

**DAVE SPICER, Detective, §**

**Shelby County Sheriff's Office; §**

**SHERIFF JAMES R. FRYE; §**

**SHELBY COUNTY SHERIFF'S OFFICE; §**

****COURT OFFICIALS AND EMPLOYEES (each in their official and individual capacities):****

**JENNIFER L. SHOFFNER, Clerk of Courts, §**

**Shelby County Common Pleas Domestic §**

**Court Division; §**

**MICHELLE K. MUMFORD, Clerk of Courts, §**

**Shelby County; §**

**LAURA E. WAYMIRE, Guardian Ad Litem; §**

****LEGAL FIRMS AND THEIR ATTORNEYS (each in their individual and professional capacities):****

**BEN EBERLY; §**

**WAITE, TOMB AND EBERLY LLP; §**

**LOPEZ, SEVERT AND PRATT LLP; §**

**RALPH BAUER; §**

**BLUE SULLIVAN; §**

**TODD SEVERT; §**

**MATTHEW C. SORG; §**

**DUNGAN AND LEFEVRE; §**

****MUNICIPAL OFFICIALS (in their official and individual capacities):****

**TODD DANMEYER, Mayor of Versailles; §**

**DAVE HARMON, Board of Education; §**

****PRIVATE PARTY DEFENDANTS:****

**ALISHA KINNETT; §**

**JEFF L. THOBE; §**

**RHONDA K. DROSS; §**

**Defendants. §**

**## VERIFIED COMPLAINT**

COMES NOW Plaintiff Dustin M. Kinnett, appearing pro se, and for his Verified Complaint against the above-named Defendants, alleges and states as follows:

## I. INTRODUCTION

1. This civil rights action arises from a sophisticated, coordinated enterprise operating through multiple Ohio jurisdictions that has systematically violated Plaintiff's constitutional rights through the abuse of governmental authority from 2021 to present day. The enterprise functions through a network of interconnected defendants who have conspired to deprive Plaintiff of his fundamental constitutional rights to familial association, due process, and equal protection under the law.

2. At the center of this case is a web of undisclosed personal and familial relationships that fatally compromised the integrity of Plaintiff's domestic relations proceedings. The Guardian ad Litem appointed to represent Plaintiff's children's interests, Laura A. Waymire, maintained an undisclosed personal friendship with Judge Julie Monnin, who is the aunt of Plaintiff's ex-wife, Alisha K. Kinnett. Neither of these disqualifying conflicts of interest was ever disclosed to Plaintiff or to the court of record. Laura Waymire admitted while under oath that she attended the same church as Julie Monnin, that she ran for the office of prosecutor in Darke County where she would work directly with Julie Monnin on a daily basis. She also admitted under oath that she attended the same church and she frequently had social activities where she and Julie Monnin spent time together.

3. Documented photographic evidence from December 12, 2023, confirms the personal relationship between GAL Waymire and Judge Monnin during the period when Waymire was actively serving as GAL in Plaintiff's case. This social media post from Waymire's campaign for Darke County Prosecuting Attorney shows her with Judge Monnin at the Darke County

Township Association Christmas Banquet, directly contradicting any claim that their relationship was distant or professional.

4. The enterprise operates through three primary components:

**a) **Judicial System Components:****

- Courts in Shelby and Darke Counties

- Multiple judicial officers with conflicts of interest

- Court administrative personnel

- Legal professionals with divided loyalties

**b) **Law Enforcement Entities:****

- Shelby County Sheriff's Office

- Versailles Police Department

- Individual officers and investigators acting outside their lawful authority

**c) **Educational and Social Service System Participants:****

- Versailles Exempted Schools

- Administrative officials

- Board of Education personnel

- Darke County Department of Job and Family Services

- Shelby County Department of Job and Family Services

5. The enterprise's pattern of constitutional violations includes:

- Due process denials through biased proceedings, ex parte communications, and corrupted legal representation

- First Amendment retaliation when Plaintiff sought to protect his children

- Equal protection violations through disparate treatment based on relationships

- Interference with access to courts by manipulating judicial processes

- Deprivation of familial association rights through orchestrated separation from his children

- Deliberate economic destruction through coordinated legal actions

- Systematic fabrication of evidence to justify unconstitutional actions

- Parental alienation through deliberate interference with parent-child relationships

6. This case presents the extraordinary circumstances that warrant federal court intervention in state domestic relations matters, as the corruption of the judicial process has rendered the state forum incapable of providing the fundamental due process guaranteed by the Constitution. Plaintiff has documentary evidence supporting these claims, including audio recordings, photographs, text messages, emails, and official court documents demonstrating conflicts of interest.

**## II. JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to:

- 28 U.S.C. § 1331 (federal question), as this action arises under the

Constitution and laws of the United States, including 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 18 U.S.C. § 1961 et seq.;

- 28 U.S.C. § 1343(a)(3) and (4) (civil rights), as this action seeks redress for the deprivation of constitutional rights under color of state law;

- 18 U.S.C. § 1964 (RICO), as this action involves violations of 18 U.S.C. § 1962; and

- 28 U.S.C. § 1367 (supplemental jurisdiction), as the state law claims form part of the same case or controversy.

8. Jurisdiction over constitutional claims is proper under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), which established that citizens may bring suits against federal officials for constitutional violations, a principle extended to state actors under 42 U.S.C. § 1983. See also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (establishing that local governments can be sued under § 1983).

9. Venue is proper in this district pursuant to:

- 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to the claims occurred in Shelby County, Ohio, within this district;

- 18 U.S.C. § 1965(a), as Defendants reside, are found, have agents, or transact affairs in this district; and

- 28 U.S.C. § 1391(b)(2), as the property that is the subject of the action is situated in this district.

## II-A. FEDERAL JURISDICTION DESPITE DOMESTIC RELATIONS EXCEPTION

10. This Court has jurisdiction over this matter despite the domestic relations exception because:

a) This case fundamentally involves federal constitutional violations under 42 U.S.C. § 1983, including deprivation of due process, equal protection, and First and Fourth Amendment rights;

b) The complaint seeks monetary damages for constitutional violations,

not determinations of custody, support, or divorce;

c) The federal RICO claims under 18 U.S.C. § 1962 are independent federal causes of action beyond any domestic relations issues;

d) The relief sought includes damages and injunctions to prevent ongoing constitutional violations, not family law determinations;

e) The systematic corruption of state judicial processes through undisclosed conflicts of interest and conspiracy presents exceptional circumstances warranting federal intervention;

f) This case does not require the federal court to decide custody or visitation but rather to remedy constitutional violations and award damages.

11. This action is distinguishable from cases barred by the domestic relations exception because it seeks to vindicate federal constitutional rights and remedy a RICO conspiracy, not to obtain a divorce, alimony, or child custody decree. See *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992).

## II-B. TIMELINESS OF CLAIMS

12. All claims in this Complaint are timely filed pursuant to applicable statutes of limitations:

a) **Continuing Violations Doctrine**: The constitutional violations alleged constitute continuing torts that persist to this day, including ongoing denial of parental rights, continuing conspiracy to violate civil rights, and persistent interference with parent-child relationships;

b) **Discovery Rule**: Plaintiff could not have discovered the full extent of the conspiracy until the October 2023 courthouse gathering revealed the coordination among defendants, and additional facts continued to emerge through 2024 and 2025;

c) **Equitable Tolling**: Defendants actively concealed their misconduct through manipulation of court records, denial of access to recordings, obstruction of filings, and maintenance of fraudulent official narratives;

d) **RICO Claims**: The pattern of racketeering activity continues through the present, with the most recent predicate acts occurring in 2024-2025, making all RICO claims timely under the four-year statute of limitations;

e) **§ 1983 Claims**: Ohio's two-year statute of limitations for § 1983 claims is satisfied as violations continue through present, and each denial of constitutional rights constitutes a new violation;

f) **Fraudulent Concealment**: Defendants' deliberate concealment of their relationships, ex parte communications, and coordinated actions tolls all applicable limitations periods.

**## II-C. ROOKER-FELDMAN DOCTRINE INAPPLICABLE**

13. The Rooker-Feldman doctrine does not bar this action because:

a) Plaintiff does not seek review or reversal of state court custody determinations;

b) This action presents independent federal claims for damages based on constitutional violations and RICO conspiracy;

c) Plaintiff challenges the corrupt process, not the custody outcomes themselves;

d) The relief sought includes damages and prospective injunctive relief to prevent ongoing constitutional violations, not modification of state court orders;

e) The claims would exist regardless of the outcome of state proceedings, as they are based on violations of federal constitutional and statutory rights.

14. This case falls within the exception recognized in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), as

Plaintiff presents independent claims for constitutional violations and federal statutory violations.

**## III. PARTIES**

**### A. Plaintiff**

15. Plaintiff Dustin M. Kinnett is an adult state citizen of the state of Wisconsin where he was born, and his mailing address is 19411 Pence Rd., Maplewood, OH 45340, in Shelby County, Ohio. He is the natural father of four minor children: twin daughters (DOB: 11/17/2004), C.K.C. (DOB: 10/12/2016), and D.M.K. (DOB: 1/18/2019). He is also a small business owner who has operated businesses in Ohio for over 25 years, including "Do Good Aquatics," a specialty marine aquarium business that engaged in interstate commerce through online sales, importation of specimens from multiple states and countries, and sales to customers across state lines. The business utilized interstate banking, shipping, and communication systems. The Defendants' actions have substantially destroyed this interstate business enterprise. He is the defendant in

ongoing domestic relations proceedings in the Shelby County Court of Common Pleas (Case No. 21DV000180).

### B. Institutional Defendants

16. Defendant State of Ohio is sued for its role in providing resources, infrastructure, personnel, and oversight to the various state actors who participated in the enterprise. The State is responsible for maintaining policies and practices that enabled and facilitated the constitutional violations at issue, including failure to train judicial officers on conflicts of interest, failure to investigate complaints of judicial misconduct, and maintaining a custom of tolerating nepotism in judicial proceedings. Claims against the State of Ohio for prospective injunctive relief are properly brought under the exception to sovereign immunity established in *Ex parte Young*, 209 U.S. 123 (1908), which permits suits against state officials for prospective relief to end ongoing violations of federal law. The State maintains its principal offices at 30 E. Broad Street, 30th floor, Columbus, OH 43215.

17. Defendant Shelby County Sheriff's Office is a department of Shelby County, Ohio, located at 555 Gerhart Rd., Sidney, OH 45365. At all relevant times, it acted under color of state law through its policies, practices, and the actions of its officers, including Defendants Spicer and Sheriff Frye. The Sheriff's Office maintained policies permitting warrantless entries based on non-resident consent, failed to train officers on Fourth Amendment requirements, and demonstrated deliberate indifference to constitutional violations through its pattern of harassment against Plaintiff. Municipal liability is properly alleged against the Sheriff's Office under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

18. Defendant Versailles Police Department is a department of the Village of Versailles, Ohio, located at 6 S. Center St., Versailles, OH 45380. At all relevant times, it acted under color of state law through its policies, practices, and the actions of its officers, including Defendants Bowlin and Nolte. The department maintained a policy, practice, or custom of failing to properly train, supervise, and discipline its officers regarding constitutional rights, which was the moving force behind the violations alleged herein. Specific failures include inadequate training on investigation protocols, deliberate indifference to false reporting, and maintaining a custom of protecting politically connected individuals. See *City of Canton v. Harris*, 489 U.S. 378 (1989).

19. Defendant Shelby County Public Defender's Office is an agency of Shelby County, Ohio, located at 129 East Court St., Sidney, OH 45365. At all relevant times, it acted under color of state law through its policies, practices, and the actions of its attorneys, including Defendant Bauer. The office maintained policies that allowed conflicts of interest to persist and permitted inadequate representation of indigent defendants like Plaintiff. See *Polk County v. Dodson*, 454 U.S. 312 (1981).

20. Defendant Versailles Exempted Schools is a public educational institution in Versailles, Ohio, located at 280 Marker Rd., Versailles, OH 45380. At all relevant times, it acted under color of state law through its policies, practices, and the actions of its employees and officials, including Defendant Harmon. The school district participated in the enterprise by restricting Plaintiff's access to his children, providing false information about Plaintiff to other defendants,

and coordinating with other enterprise members to deprive Plaintiff of his constitutional rights. See *West v. Atkins*, 487 U.S. 42 (1988).

21. Defendant Ohio Bar Association, located at 1700 Lake Side Shore Drive St., East 100, Columbus, OH 43204, is responsible for oversight of attorney conduct in Ohio. It maintained policies and practices that enabled and facilitated the constitutional violations at issue by failing to properly investigate complaints against attorneys participating in the enterprise and turning a blind eye to obvious ethical violations committed against Plaintiff. See *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001).

22. Defendant Darke County Department of Job and Family Services is a county agency responsible for investigating allegations of child abuse and neglect. At the direction of Judge Monnin and others, this agency has been corrupted to advance fraudulent allegations against Plaintiff while refusing to investigate legitimate welfare concerns about children's exposure to known sexual predators.

23. Defendant Shelby County Department of Job and Family Services is a county agency responsible for child welfare investigations that has participated in the fabrication of evidence against Plaintiff while ignoring substantiated concerns about the welfare of Plaintiff's children.

24. Defendant Shelby County Court of Common Pleas, located at 100 E. Court St., Sidney, OH 45365, is the judicial entity where the domestic relations proceedings took place and which has been implicated in the conspiracy to deprive Plaintiff of his constitutional rights.

25. Defendant Darke County Municipal Court, located at 504 S. Broadway, Greenville, OH 45331, is the judicial entity where Defendant Judge Julie Monnin serves and which has been implicated in the conspiracy to deprive Plaintiff of his constitutional rights.

26. Defendant Shelby County Clerk of Courts is the official custodian of records for the Shelby County Court of Common Pleas and employs Defendants Jennifer Schoffner and Michelle K. Mumford.

27. Defendant Shelby County Prosecutor's Office is the agency responsible for prosecuting criminal matters in Shelby County that has been corrupted to advance false allegations against Plaintiff.

28. Defendant Shelby County Commissioners are the governing body of Shelby County responsible for oversight of county agencies involved in the conspiracy. They maintained policies of deliberate indifference to constitutional violations by failing to investigate complaints, train employees, and supervise county departments.

29. Defendant Darke County Commissioners are the governing body of Darke County responsible for oversight of county agencies involved in the conspiracy. They demonstrated deliberate indifference by failing to address known conflicts of interest in their judicial system.

**### C. Judicial Defendants**

30. Defendant Judge Julie Monnin is sued in her official capacity as a Municipal Court Judge in Darke County, Ohio, with offices at 504 S. Broadway, Greenville, OH 45331, and in her individual capacity, residing at 6295 Willis Rd., Greenville, OH 45331. At all relevant times, she acted under color of state law. She is the aunt of Plaintiff's ex-wife, Alisha Kinnett, and the great-aunt of the children at issue in the custody proceedings. This familial relationship created a clear conflict of interest that required disclosure and recusal under the Ohio Code of

Judicial Conduct. Julie Monnin is the municipal court judge of Darke County. Duane Monnin is the brother-in-law of Julie Monnin. Judge Monnin's actions outside her judicial capacity included:

a) Using her position to influence proceedings involving her niece

b) Coordinating with other judges, including Defendant Morris, to ensure favorable outcomes for her niece

c) Attending proceedings outside her jurisdiction to intimidatePlaintiff

d) Ordering security personnel to detain Plaintiff without legal basis or jurisdiction

e) Organizing ex parte gatherings with other defendants to coordinate strategy

f) Exerting influence over multiple agencies including law enforcement, schools, and social services

g) Using her position to intimidate witnesses and professionals who might otherwise support Plaintiff

h) Presiding over numerous cases involving her own family members, including cases where her husband Darrell Monnin was a plaintiff and cases involving Duane Monnin and other close family members, without ever disclosing these relationships on record or recusing herself, establishing a clear pattern of violating judicial canons

i) Acting in complete absence of all jurisdiction when ordering Plaintiff's detention outside her courtroom

j) Engaging in criminal conspiracy to violate civil rights under 18 U.S.C. § 241

k) Using administrative authority to influence case assignments and personnel decisions

These actions were taken outside the scope of her judicial function and jurisdiction, removing judicial immunity protection. See *Forrester v. White*, 484 U.S. 219, 227 (1988); *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (judicial immunity does not apply to actions taken in "clear absence of all jurisdiction").

31. Defendant James F. Stevenson is sued in his official capacity as a Shelby County Court of Common Pleas Judge at 100 East Court St., 3rd Floor, Sidney, OH 45365, and in his individual capacity. At all relevant times, he acted under color of state law. His actions outside his judicial capacity included:

a) Participating in ex parte communications regarding Plaintiff's cases

b) Coordinating with other defendants to ensure adverse outcomes for Plaintiff

c) Abusing judicial authority to benefit enterprise members

d) Refusing to recuse despite obvious conflicts of interest

e) Deliberately ignoring evidence favorable to Plaintiff

f) Ordering unauthorized sheriff's sale of Plaintiff's primary residence

g) Actively concealing sale proceedings from Plaintiff

h) Providing false information about property status

i) Acting in administrative capacity when coordinating with court staff to manipulate proceedings

j) Engaging in criminal acts of mail and wire fraud

These non-judicial actions are not protected by judicial immunity. See *Pulliam v. Allen*, 466 U.S. 522 (1984).

32. Defendant Travis L. Fliehman is sued in his official capacity as a Darke County Common Pleas Judge at 504 S. Broad Street, Greenville, OH 45331, and in his individual capacity. At all relevant times, he acted under color of state law. His actions outside his judicial capacity included:

a) Participating in ex parte communications with other defendants

b) Coordinating judicial decisions with other enterprise members

c) Intentionally disregarding evidence favorable to Plaintiff

d) Refusing to recuse despite conflicts of interest

e) Using his position to benefit enterprise members

f) Acting without jurisdiction when coordinating cross-county actions

These administrative and personal actions fall outside judicial immunity protection. See *Stump v. Sparkman*, 435 U.S. 349 (1978).

33. Defendant Gary J. Carter is sued in his official capacity as a Shelby County Ohio Municipal Court Judge at 110 W. Court St., Sidney, OH 45365, and in his individual capacity. At all relevant times, he acted under color of state law. His actions outside his judicial capacity included:

a) Orchestrating Plaintiff's wrongful incarceration for 10 days on charges that were later dismissed

b) Deliberately ignoring Plaintiff's legitimate business concerns that resulted in catastrophic business loss

c) Refusing to allow Plaintiff to dismiss counsel with clear conflicts of interest

d) Forcing representation by an attorney openly hostile to Plaintiff's interests

e) Coordinating with other defendants to maximize harm to Plaintiff

f) Maintaining Plaintiff's detention for 3 days after charges were dismissed

g) Engaging in ex parte communications with other defendants

h) Acting in clear absence of jurisdiction when maintaining detention after dismissal

i) Engaging in administrative conspiracy with jail officials

These actions went beyond judicial functions and constituted administrative actions or actions in "complete absence of all

jurisdiction," removing judicial immunity. See *Forrester*, 484 U.S. at 227; *Bradley v. Fisher*, 80 U.S. 335 (1871).

34. Defendant Kristina M. Morris is sued in her official capacity as Magistrate of the Shelby County Domestic Courts Division Common Pleas with offices at 100 E. Court St., Sidney, OH 45365, and in her individual capacity. At all relevant times, she acted under color of state law. Kristina K. Morris was the magistrate during the hearing when Laura Waymire admitted such things which shows clearly that Kristina K Morris was very aware. Additionally, there have been multiple motions filed for Kristina Morris to recuse herself and each and every time she has failed to do so and then retaliated towards Mr. Kinnett, trying to punish him for merely standing up for his rights in trying to protect his children. Her actions outside her judicial capacity included:

a) Maintaining a personal relationship with Judge Monnin despite conflicts of interest

b) Refusing to recuse herself despite clear bias and conflicts

c) Participating in ex parte communications with other defendants

d) Deliberately imposing excessive restrictions on Plaintiff's parental rights

e) Limiting Plaintiff's contact with his children to one 30-minute call per week

f) Meeting with other defendants outside of court proceedings to coordinate actions

g) Systematically ignoring evidence favorable to Plaintiff

h) Allowing Defendant Alisha Kinnett to violate court orders without consequence

i) Instructing Versailles elementary public school not to allow Mr. Kinnett access to his children at an already scheduled lunch with his daughter, Cecilia Kay Kinnett

j) Instructing Versailles elementary public school not to allow Mr.

Kinnett to attend any upcoming events which were open to the public where he would have been able to support and encourage his daughter

k) Assisting Alisha Kay Kinnett in the alienation of Mr. Kinnett's two youngest children

l) Proceeding without a signed magistrate consent form from all parties, and when Mr. Kinnett made the court aware of the lack of consent form, forcing Mr. Kinnett into trial anyway

m) When Mr. Kinnett challenged jurisdiction, stating "we're not going to deal with that right now," which was a clear violation of due process and acting in clear absence of jurisdiction

n) Using administrative authority to direct school officials

o) Acting outside judicial capacity when coordinating with non-parties

The retaliatory actions include increased restrictions on the time that Mr. Kinnett was allowed to have any contact with his two youngest children specifically making it so that he could not even attend public school events that were open to the public. This obviously causes extreme harm to the relationship between Mr. Kinnett and his children, as he has not been able to have any meaningful in person contact with the children in several months and because of Kristina K

Morris's actions he is unable to attend any sport events or come to support his children in any of the school activities.

These actions constitute administrative functions or actions taken in complete absence of jurisdiction, not protected by judicial immunity.

See *Mireles*, 502 U.S. at 11-12; *Forrester*, 484 U.S. at 227-29.

### D. Law Enforcement Defendants

35. Defendant Josh Bowlin is sued in his official capacity as Chief ofthe Versailles Police Department and in his individual capacity,residing at 9108 Long Rd., Versailles, OH 45380. At all relevant times, he acted under color of state law. He provided insufficient training and the training appears to have created an atmosphere where civil rights violations are common place. His actions included:

a) Directing the fabrication of reports regarding Plaintiff

b) Engaging in cover-ups of misconduct against Plaintiff, including the dog bite incident at Stacie Brown's residence involving Cecilia Kinnett

c) Refusing to accept or investigate reports of wrongdoing filed by Plaintiff

d) Coordinating with other defendants to harass Plaintiff

e) Using his position to intimidate Plaintiff

f) Providing false information to courts regarding Plaintiff's conduct

g) Failing to train and supervise officers regarding constitutional rights

h) Directing Officer Nathan Nolte to neglect duties and suppress reports

i) Challenging subpoena effectiveness to prevent truth discovery

These actions violated clearly established constitutional rights and are not protected by qualified immunity. See *Monroe v. Pape*, 365 U.S. 167 (1961); *Hope v. Pelzer*, 536 U.S. 730 (2002).

36. Defendant Nathan Nolte is sued in his official capacity as a Police Officer with the Versailles Police Department at 6 S. Main Center St., Versailles, OH 45380, and in his individual capacity. At all relevant times, he acted under color of state law. His actions included:

a) Harassment of Plaintiff based on his relationship with the enterprise, including the New Year's Eve 2022 incident involving targeted light harassment across multiple locations

b) Falsification of police reports regarding Plaintiff's conduct

c) Participation in cover-ups of misconduct against Plaintiff, including the dog bite investigation

d) Coordination with other defendants to deprive Plaintiff of constitutional rights

e) Selective enforcement of laws against Plaintiff

f) Intimidation of Plaintiff and potential witnesses

g) Providing false information to courts regarding Plaintiff

h) Coordinating multi-agency pursuit including Darke County Sheriff activation

These actions violated clearly established constitutional rights and are not protected by qualified immunity. See *Cooper v. Pate*, 378 U.S. 546
(1964); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

37. Defendant Dave Spicer is sued in his official capacity as a Detective with the Shelby County Sheriff's Office and in his individual capacity, residing at 9780 Baker Rd., Maplewood, OH 45340. At all relevant times, he acted under color of state law. His actions included:

a) Leading the unlawful home invasion of Plaintiff's residence in September 2021

b) Accepting invalid consent from a non-resident (Defendant Alisha Kinnett) to enter Plaintiff's home

c) Forcibly removing an air conditioning unit to gain entry

d) Entering with firearms drawn despite knowing children were present

e) Attempting to breach a bathroom door where Plaintiff had secured himself

f) Using excessive force in the presence of terrified children

g) Deliberately creating a traumatic situation for Plaintiff's children

h) Falsifying reports regarding the incident

i) Coordinating with other defendants to separate Plaintiff from his children

j) Acting under influence of Judge Julie Monnin through ex-wife's unauthorized directives

These actions violated clearly established Fourth Amendment rights against unreasonable searches and seizures and are not protected by qualified immunity. See *Graham v. Connor*, 490 U.S. 386 (1989); *Payton v. New York*, 445 U.S. 573 (1980); *United States v. Matlock*, 415 U.S. 164 (1974).

38. Defendant Sheriff James R. Frye is the Sheriff of Shelby County, Ohio, who has participated in the conspiracy by deploying law enforcement resources to harass Plaintiff based on fabricated allegations. He is sued in both his individual and official capacities.

His actions included:

a) Directing systematic harassment and surveillance of Plaintiff (2021-Present)

b) Authorizing weekly property intrusions including multiple deputy deployments

c) Permitting warrantless property searches and barn inspections

d) Maintaining departmental coordination for systematic harassment

e) Demonstrating knowledge of retaliatory patterns

f) Maintaining policies permitting constitutional violations

**### E. Court Officials and Employees**

39. Defendant Jennifer L. Shoffner is sued in her official capacity as Shelby County Common Pleas Domestic Court Division Clerk of Courts and in her individual capacity, residing at 10444 State Route 274, Anna, OH 45302. At all relevant times, she acted under color of state law. Heractions included:

a) Manipulating court records related to Plaintiff's cases

b) Interfering with Plaintiff's filings to disadvantage him in proceedings

c) Participating in ex parte communications with judges and other defendants

d) Attending the improper "reunion" gathering in October 2023

e) Providing confidential information to unauthorized defendants

f) Coordinating with other defendants to ensure adverse outcomes for Plaintiff

g) Deliberately mishandling Plaintiff's court filings

h) Providing preferential treatment to filings by enterprise members

i) Purposely sending Mr. Kinnett on "wild goose chases" and wasting his time to prevent him from obtaining recordings of motions

j) Inhibiting his ability to file motions in a timely fashion

k) Coordinating with Magistrate Morris for premature court closure

l) Establishing pattern of discrimination with multiple victims including Lance Francis and Ashley

These actions violated clearly established due process rights and are not protected by qualified immunity. See *West v. Atkins*, 487 U.S. 42 (1988); *Zinermon v. Burch*, 494 U.S. 113 (1990).

40. Defendant Michelle K. Mumford is sued in her official capacity as Shelby County Clerk of Courts and in her individual capacity. At all relevant times, she acted under color of state law. Her actions included:

a) Manipulating court records related to Plaintiff's cases

b) Interfering with Plaintiff's filings to disadvantage him in proceedings

c) Participating in ex parte communications with judges and other defendants

d) Providing confidential information to unauthorized defendants

e) Coordinating with other defendants to ensure adverse outcomes for Plaintiff

f) Deliberately mishandling Plaintiff's court filings

g) Providing preferential treatment to filings by enterprise members

h) Inhibiting his ability to file motions in a timely fashion

i) Coordinating with Magistrate Morris for premature court closure

j) Establishing pattern of discrimination with multiple victims including Lance Francis and Ashley

These actions violated clearly established due process rights and are not protected by qualified immunity. See *West v. Atkins*, 487 U.S. 42 (1988); *Zinermon v. Burch*, 494 U.S. 113 (1990).

41. Defendant Laura E. Waymire is sued in her official capacity as Shelby County Guardian Ad Litem (GAL) with offices at 410 N. Broadway, Greenville, OH 45331, and in her individual capacity. She was appointed as Guardian ad Litem for Plaintiff's minor children in late 2021 during the original divorce proceedings. She displayed her bias during both appointments. At all relevant times, she acted under color of state law.

Her actions included:

a) Failing to properly investigate allegations regarding the children's welfare, including neglecting to interview Rachel Thobe

b) Neglecting her duties to act in the best interests of the children

c) Maintaining a close personal relationship with Judge Monnin while serving as GAL

d) Attending the same church as Judge Monnin and socializing with her regularly

e) Campaigning with Judge Monnin for political office in 2024 while serving as GAL for Darke County Prosecutor

f) Seeking the Darke County Prosecutor position, which would have created a direct working relationship with Judge Monnin

g) Providing biased recommendations favoring Defendant Alisha Kinnett

h) Deliberately ignoring evidence favorable to Plaintiff

i) Coordinating with other defendants to separate Plaintiff from his children

j) Multiple home visit cancellations and appearing disheveled/hungover during visits

k) Suppressing critical information including age-inappropriate twerking incident

l) Creating false GAL report containing manufactured allegations about Plaintiff's

The first appointment she canceled multiple times for the home visit and then failed to include the twerking incident in the report. After canceling multiple times last minute for the home visit during the first appointment was when she showed up in sweatpants with her teenage daughter who sat in the car throughout the duration of the visit. It was evident that Laura cared little about anything that Mr. Kinnett had to say during the entirety of the visit.

Additionally, during Laura Waymire's second appointment as GAL she completely failed to make a home visit with Mr. Kinnett and his children. She admitted this under oath while on the stand. Mr. Kinnett has emails that he sent to Laura Waymire during the second appointment,

where she not only did not reply, but also then neglected to investigate any of the serious details that Mr. Kinnett brought to her attention, including the serious dental records of the children, their exposure to known pedophile Duane Monnin.

For further clarification, Mr. Kinnett recorded all of the interactions that he had with Laura Waymire during the course of her second appointment as GAL. When she was on the stand, Mr. Kinnett informed her of this, she was shocked, and obviously shaken that Mr. Kinnett had recorded her for obvious reasons.

These actions violated clearly established rights and are not protected by qualified immunity. See *Kirtley v. Rainey*, 326 F.3d 1088 (9th Cir. 2003); *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007).

**### F. Legal Firms and Attorneys**

42. Defendant Ben Eberly resides at 7699 Winding Way N., Tipp City, OH 45371, is an attorney with Waite Tomb and Eberly LLP who represented Mr. Kinnett while participating in the conspiracy against him. While purporting to represent Plaintiff, he actively worked against Plaintiff's interests through actions including:

a) Verbally abusing Plaintiff during the October 2023 meeting, using profanity and name-calling in an attempt to provoke Plaintiff

b) Attempting to coerce Plaintiff into accepting supervised visitation despite Plaintiff's clear refusal

c) Threatening Plaintiff that he "won't get to see [his] children at all" when coercion failed

d) Explicitly stating he "did not care about [Plaintiff's] children" and that it "wasn't his problem"

e) Repeatedly leaving client meetings to consult with opposing counsel and the magistrate

f) Preventing Plaintiff from directly addressing the court

g) Participating in the improper "reunion" gathering with other defendants

h) Coordinating with other defendants to undermine Plaintiff's case

i) Misrepresenting facts to Plaintiff regarding legal options

j) Deliberately providing ineffective assistance to advance enterprise goals

These actions, taken in concert with state actors, constitute action under color of state law. See *Tower*, 467 U.S. at 920; *Dennis*, 449 U.S. at 27-28.

43. Defendant Waite, Tomb and Eberly LLP maintains offices at 124 West Main St., Troy, OH 45373. The firm participated in the enterprise through its attorney Ben Eberly and through coordination with other defendants to further the enterprise's goals. The firm is liable for the actions of its partners and employees taken within the scope of their employment. See *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993).

44. Defendant Lopez, Severt and Pratt LLP maintains offices at 18 East Water St., Troy, OH 45373. The firm participated in the enterprise through attorneys Todd Severt and Blue Sullivan, coordinating with other defendants to further the enterprise's goals. The firm is liable for the actions of its partners and employees taken within the scope of their employment. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

45. Defendant Ralph Bauer served as Shelby County Ohio Public Defender with offices at 116 North Ave., Sidney, OH 45365, and is sued in his individual capacity. While appointed to represent Plaintiff, his actions included:

a) Maintaining an undisclosed conflict of interest based on previous unsuccessful prosecution of Plaintiff's father

b) Filing an insincere conflict disclosure that was designed to be denied

c) Coordinating with Judge Carter to remain on Plaintiff's case despite objections

d) Refusing to withdraw when directly fired by Plaintiff

e) Repeatedly attempting to coerce Plaintiff to plead guilty to crimes he did not commit

f) Threatening Plaintiff with excessive jail time (30-90 days, potentially up to 180 days) if he refused to plead guilty

g) Stating Plaintiff would "rot in jail" if he didn't accept the plea bargain

h) Orchestrating a prison meeting on day six of Plaintiff's incarceration to apply pressure

i) Claiming to be "not your attorney" while refusing to answer case questions

j) Mocking Plaintiff during consultations

k) Calling Plaintiff from outside the jail on day seven to claim he had been "working so hard" after the charges were dismissed

l) Failing to secure Plaintiff's release after charges were dismissed, resulting in 3 additional days of detention

m) Making inappropriate advances and engaging in predatory behavior pattern

These actions violated Plaintiff's clearly established Sixth Amendment right to effective assistance of counsel. See *Cuyler v. Sullivan*, 446 U.S. 335 (1980); *Strickland v. Washington*, 466 U.S. 668 (1984).

46. Defendant Blue Sullivan is an attorney employed at Lopez, Severt and Pratt LLP at 18 East Water St., Troy, OH 45373, sued in his/her individual capacity. His actions included:

a) Participating in the enterprise through coordination with other defendants

b) Engaging in ex parte communications regarding Plaintiff's cases

c) Assisting in the manipulation of legal proceedings

d) Coordinating legal strategy with other enterprise members

e) Filing misleading documents with courts

f) Furthering the enterprise's goals to deprive Plaintiff of his rights

g) Information suppression and evidence withholding

These actions, taken in concert with state actors, constitute action under color of state law. See *Tower*, 467 U.S. at 920; *Dennis*, 449 U.S. at 27-28.

47. Defendant Todd Severt maintains offices at 18 East Water St., Troy, OH 45373, and is sued in his individual capacity. His actions included:

a) Participating in ex parte communications during the October 2023 courthouse "reunion"

b) Consulting with Ben Eberly during attempts to coerce Plaintiff

c) Coordinating legal strategy with other enterprise members

d) Filing misleading documents with courts

e) Furthering the enterprise's goals to deprive Plaintiff of his rights

f) Engaging in improper communications with court officials

g) Assisting in the manipulation of legal proceedings against Plaintiff

h) Representing Plaintiff's ex-wife in the domestic relations proceedings

i) Knowingly filing false affidavits and pleadings

j) Exploiting his connections with court personnel

k) Coordinating with other defendants to fabricate evidence

l) Abusing legal process to harass Mr. Kinnett

These actions, taken in concert with state actors, constitute action under color of state law. See *Tower*, 467 U.S. at 920; *Dennis*, 449 U.S. at 27-28.

48. Defendant Matthew C. Sorg is an attorney maintaining offices at 210 West Main Street, Troy, OH 45373, sued in his individual capacity. His actions included:

a) Active participation in the enterprise's coordinated efforts

b) Attempting to seize Mr. Kinnett's adjoining property with agricultural building

c) Coordinating with other defendants to deprive Plaintiff of property rights

d) Filing misleading documents with courts

e) Furthering the enterprise's goals through legal manipulation

f) Engaging in improper communications with court officials

g) Assisting in fraudulent property seizure schemes

These actions, taken in concert with state actors, constitute action under color of state law. See *Tower*, 467 U.S. at 920; *Dennis*, 449 U.S. at 27-28.

49. Defendant Dungan and LeFevre is a law firm maintaining offices at 210 W. Main St., Troy, OH 45373. The firm participated in the enterprise through its attorneys and through coordination with other defendants to further the enterprise's goals, particularly in property seizure attempts. The firm is liable for the actions of its partners and employees taken within the scope of their employment. See *American Civil Liberties Union of Maryland, Inc. v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993).

**### G. Municipal Officials**

50. Defendant Todd Danmeyer is sued in his official capacity as Mayor of Versailles, Ohio with offices at 177 N. Center St., Versailles, OH 45380, and in his individual capacity. At all relevant times, he acted under color of state law. His actions included:

a) Participating in cover-ups of misconduct against Plaintiff, including dog bite incident

b) Using his position to influence law enforcement actions against Plaintiff

c) Enabling violations of Plaintiff's rights through policy and practice

d) Coordinating with other defendants to further the enterprise's goals

e) Failing to address known misconduct by city officials

f) Supporting biased enforcement of laws against Plaintiff

g) Allowing improper use of municipal resources against Plaintiff

These actions violated clearly established constitutional rights and are not protected by qualified immunity. See *Pembaur v. City ofCincinnati*, 475 U.S. 469 (1986); *Owen v. City of Independence*, 445 U.S. 622 (1980).

51. Defendant Dave Harmon maintains offices at 459 South Center St.,Versailles, OH 45380 and resides at 93 Hickory Dr., Versailles, OH 45380. He participated in the conspiracy through his position with the board of education and is sued in his official capacity as a member of

the Versailles Board of Education and in his individual capacity. At all relevant times, he acted under color of state law. His actions included:

a) Interfering with Plaintiff's communications with his children at school

b) Providing false information about Plaintiff to other defendants

c) Coordinating with other defendants to restrict Plaintiff's access to his children

d) Implementing policies that discriminated against Plaintiff

e) Participating in the enterprise's goal of separating Plaintiff from his children

f) Using school resources to support the enterprise's activities

g) Allowing school facilities to be used to interfere with parent-child relationships

h) Engaging in deceptive practices and direct misrepresentation

These actions violated clearly established constitutional rights and are not protected by qualified immunity. See *West*, 487 U.S. at 49-50; *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).

### H. Private Party Defendants

52. Defendant Alisha Kinnett resides at 123 Water Street, Versailles, OH

45380. She is Plaintiff's ex-wife, the mother of his children C.K.C. and D.M.K., and the niece of Defendant Judge Julie Monnin. Her actions included:

a) Leveraging her familial connections to the courts to gain advantage in custody proceedings

b) Providing unauthorized consent for law enforcement to enter Plaintiff's home in September 2021

c) Systematically interfering with communication between Plaintiff and his children by:

- Creating excessive noise during calls

- Prematurely terminating calls

- Coaching children to cover phone cameras

- Encouraging children to lie to their father

- Arbitrarily denying scheduled communications

d) Refusing to allow the children to attend their great-grandparents' funeral in Wisconsin

e) Coordinating with other defendants to maintain separation between Plaintiff and his children

f) Participating in the October 2023 courthouse "reunion" gathering

g) Systematically alienating the children from their father through deliberate parental alienation tactics

h) Violating court orders regarding communication and visitation without consequence

i) Using her aunt's judicial position to influence multiple agencies

j) Boasting about having the courts, law enforcement, and local officials "in her pocket"

k) Threatening to use these connections to destroy Mr. Kinnett and take the children away

l) Admitting under oath on the stand that she had previously agreed with Mr. Kinnett that it would be best to keep the children away from Duane Monnin for their safety, having previously confided in Mr. Kinnett about the inappropriate sexual relations between Duane Monnin and her sister Rachel Thobe, both as a minor and continuing as an adult where Duane would pay Rachel for sexual favors.

These actions, taken in concert with state actors, constitute action under color of state law. See *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Adickes*, 398 U.S. at 152.

53. Defendant Jeff L. Thobe resides at 9439 Studer Rd., Versailles, OH 45380, and is the stepfather of Defendant Alisha Kinnett. His actions included:

a) Participating in the October 2023 courthouse "reunion" gathering

b) Coordinating with Judge Monnin, Alisha Kinnett, and Rhonda Dross todeprive Plaintiff of his constitutional rights

c) Assisting in the alienation of children from their father

d) Using his relationship with Judge Monnin to influence proceedings

e) Supporting efforts to maintain separation between Plaintiff and his children

f) Participating in attempts to intimidate Plaintiff after court proceedings

g) Coordinating with other defendants to advance enterprise goals

h) Endorsing financial crimes including unauthorized transfers and illegal withdrawals

i) Supporting criminal activity with claims that last name justifies unlimited access to accounts

These actions, taken in concert with state actors, constitute action under color of state law. See *Adickes*, 398 U.S. at 152; *Dennis*, 449 U.S. at 27-28.

54. Defendant Rhonda K. Dross resides at 9387 Saint Peters Rd., Versailles, OH 45380, is the mother of Defendant Alisha Kinnett and sister of Defendant Judge Julie Monnin. Duane Monnin is the brother of Rhonda Dross. Her actions included:

a) Orchestrating and directing many of the enterprise's activities as primary conspiracy architect

b) Coordinating between family members and official actors

c) Participating in the October 2023 courthouse "reunion" gathering

d) Confronting Plaintiff in the courthouse hallway to inflict psychological harm

e) Telling Plaintiff his children were "doing fine without their father," "did not miss their father," and "did not need him in their life"

f) Using her relationship with Judge Monnin to influence proceedings

g) Supporting efforts to maintain separation between Plaintiff and his children

h) Participating in attempts to intimidate Plaintiff

i) Coordinating with other defendants to advance enterprise goals

j) Facilitating exposure of children to Duane Monnin, a known childmolester

k) Concealing criminal history of family members including abuse of Rachel Thobe (daughter)

l) Creating intentional risk to children's safety

m) Forcing Rachel Thobe to serve sandwiches and coffee weekly to men including Duane Monnin who abused her, despite Rachel's expressed distress

n) Continuing psychological abuse of her daughter Rachel by forcing interactions with her abuser

o) Allowing situations where Plaintiff's young children are left without proper adult supervision when Duane Monnin visits, with only a 13-year-old cousin present

These actions, taken in concert with state actors, constitute action under color of state law. See *United States v. Price*, 383 U.S. 787 (1966); *Lugar*, 457 U.S. at 941.

**## IV. FACTUAL ALLEGATIONS**

### A. Background and Initial Custody Proceedings

55. Plaintiff Dustin M. Kinnett and Alisha K. Kinnett were parties to a divorce and custody proceeding in the Shelby County Court of Common Pleas, Case No. 21DV000180, which began in 2021.

56. Mr. Kinnett and Defendant Alisha Kinnett divorced in January 2022, initially agreeing to a

Shared Parenting Plan providing each parent with 50% custody of their minor children, C.K. and M.K.

57. From the very beginning of these proceedings in 2021, Plaintiff has been subjected to a systematic pattern of due process violations, fabrication of evidence, and judicial bias that has deprived him of his constitutional rights.

58. In August 2021, Defendant Travis Fliehman oversaw an ex parte hearing in Darke County where Julie Monnin attended and influenced the outcome of the hearing as she has a professional and personal relationship with Common Pleas Judge Travis Fliehman. This resulted in Alisha obtaining a civil protection order against Mr. Kinnett based on false allegations. Despite Julie Monnin's clear conflict of interest as Alisha's family member, this relationship was not disclosed.

59. Throughout the divorce and custody proceedings, Alisha repeatedly boasted about her familial connections to the court system, stating she had the courts, law enforcement, and local officials "in her pocket." She threatened to use these connections to destroy Mr. Kinnett and take the children away from him.

60. This concealed familial relationship has tainted all proceedings related to Plaintiff's case, as Judge Monnin has leveraged her judicial authority to influence other officials, including Magistrate Morris, GAL Waymire, and law enforcement, to advance her niece's interests at the expense of Plaintiff's constitutional rights.

### B. The Unlawful Home Invasion and Triggering Incident (September 2021)

61. In August 2023, Mr. Kinnett learned that Alisha was exposing their children to her uncle Duane Monnin, a known sexual predator. When Mr. Kinnett took steps to protect his children from this danger, the defendants launched a coordinated campaign of retaliation.

62. However, the enterprise's pattern of constitutional violations had begun earlier. In the first week of September 2021, the enterprise commenced its coordinated efforts to separate Plaintiff

from his children through an unlawful and violent home invasion by Shelby County Sheriff's Deputies Dave Spicer and Joel Howell.

63. Prior to this incident, Plaintiff had been advised by his counsel to remain inside his residence with his four children if law enforcement arrived without a warrant, which is precisely what occurred.

64. Without a valid warrant, Deputies Spicer and Howell:

a) Arrived at Plaintiff's residence where he was present with his four minor children

b) Obtained invalid "permission" from Plaintiff's ex-wife (Defendant Alisha Kinnett), who was not a resident of the home and had not been for some time

c) Knowingly relied on non-resident's unauthorized consent despite having documentation in their possession showing she was not a resident

d) Forcibly and destructively removed a master bedroom window air conditioning unit to gain entry

e) Entered the residence through the window with firearms drawn, despite knowing four minor children were present

f) Created a scene of terror that traumatized the children, particularly Plaintiff's twin daughters who screamed in fear at the armed intrusion

g) Attempted to breach the bathroom door where Plaintiff had secured

himself after ensuring the children's safety

h) Picked the bathroom lock and applied excessive force to push through

the door against Plaintiff's defensive position

i) Continued aggressive tactics despite no resistance beyond Plaintiff's defensive position

65. The officers' actions demonstrated premeditated misconduct through:

a) Deliberate disregard of constitutional requirements for home entry

b) Knowing reliance on invalid consent

c) Excessive force in the presence of children

d) Escalation without justification

e) Creation of unnecessary risk to minor children

f) Acting under influence of Judge Julie Monnin through ex-wife's unauthorized directives

66. This violent entry was not justified by exigent circumstances, as the officers knew the children were safe inside with their father, therewas no imminent danger, and no emergency existed that would justify bypassing the warrant requirement. See *Payton v. New York*, 445 U.S. 573, 590 (1980); *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *United States v. Matlock*, 415 U.S. 164, 171 (1974).

67. The entry violated clearly established Fourth Amendment precedent in *Georgia v. Randolph*, 547 U.S. 103 (2006), and *Illinois v. Rodriguez*, 497 U.S. 177 (1990).

68. The immediate aftermath of this traumatic incident permanently damaged the family unit, traumatized the children (particularly C.K.C., DOB: 10/12/2016; D.M.K."

Kinnett, DOB: 1/18/2019; and twin daughters Alissa and Brianna, DOB: 11/17/2004), and set in motion the enterprise's continuing pattern of constitutional violations.

### C. Additional Pattern of Law Enforcement Harassment

69. On August 28, 2023, another incident demonstrated the pattern of misconduct when Officers Nick Topp and Deputy Knight:

a) Failed to address legitimate child safety concerns about sexual abuse

b) Refused reasonable requests for supervisor presence

c) Permitted dangerous situation to escalate

d) Engaged in unprovoked physical assault including intentional tripping, forceful arm restraint, and attempted face-down asphalt impact

e) Fabricated obstruction charge with no probable cause (later dismissed)

f) Enabled ex-wife's aggressive behavior while failing to protect minor children

70. From 2021 to present, the Shelby County Sheriff's Office has engaged in systematic harassment and surveillance including:

a) Weekly property intrusions with multiple deputy deployments

b) Unwarranted property searches and barn inspections without warrants

c) Pattern of intimidating show of force at various times of day/night

d) Reduced frequency only after Plaintiff installed security cameras, demonstrating consciousness of guilt

### **D. Family Separation and Communication Interference (September 2021 - Present)**

71. Following the September 2021 unlawful home invasion, Plaintiff and his twin daughters were completely separated from his two youngest children, Cecilia and Max, with no physical contact for several months.

72. When limited contact eventually resumed, communication was severely restricted and deliberately sabotaged through a systematic pattern of interference by Defendant Alisha Kinnett, including:

a) Arbitrary denial of communication attempts

b) Intentional creation of excessive background noise to prevent meaningful conversation

c) Orchestrated interference with video calls, including coordinated efforts to cover phone cameras, coaching children to participate in deceptive behavior, encouraging children to lie to their father, and premature termination of calls

d) A specific incident on daughter Cecilia's birthday where DefendantAlisha Kinnett orchestrated multiple participants to block videocommunication, created a hostile environment turning communication into mockery, deliberately undermined father-daughter relationship during a significant occasion, and terminated birthday communication prematurely

e) Systematic parental alienation tactics designed to destroy the parent-child relationship

73. Defendant Alisha Kinnett also refused to allow the younger children to travel to Wisconsin with their father and twin sisters for the double funeral of their paternal great-grandparents, deliberately preventing them from participating in the family grieving process.

74. This pattern of interference was systematically enabled and facilitated by judicial defendants, particularly Magistrate Morris, who refused to enforce communication orders, ignored evidence

of interference, permitted violations without consequence, and continually reduced rather than expanded contact opportunities.

75. From August 28, 2023 to present, contact has been restricted to:

- No overnight visits

- Weekly 30-minute phone calls (Thursday 8:00-8:30 PM)

- Bi-monthly supervised visits

- Limited to 2-hour duration at RAFT Center, Celina, Ohio

76. From early 2024 to early February 2025, Plaintiff experienced a complete denial of in-person access to his youngest children when visitations at The RAFT center were canceled abruptly after defendants became aware that Mr. Kinnett had intentions of filing a federal lawsuit. There have been no in-person visitations between Mr. Kinnett and his two youngest children since early February 2025.

**### E. Child Safety Concerns and Familial Abuse**

77. The relationship between Duane Monnin and Rachel Thobe is not only disturbing because Rachel was a minor when it began, but because it constitutes incest between an uncle and niece. Duane Monnin is the brother of Rhonda Dross and the brother-in-law of Judge Julie Monnin.

78. Alisha Kinnett admitted under oath on the stand that she had previously agreed with Mr. Kinnett that it would be best to keep the children away from Duane Monnin for their safety. She had previously confided in Mr. Kinnett about the inappropriate sexual relations between Duane

Monnin and her sister Rachel Thobe, both as a minor and continuing as an adult where Duane would pay Rachel for sexual favors.

79. Rachel Thobe has since confided in Mr. Kinnett about the inappropriate sexual relationship between her and her uncle Duane. There have been many conversations, some of which Mr. Kinnett has recordings of, where she is crying hysterically because of the abuse and the continued psychological abuse inflicted by her mother Rhonda Dross.

80. Rhonda Dross continues to psychologically abuse Rachel by forcingher to serve sandwiches and coffee weekly to men including Duane Monnin.Despite Rachel expressing how painful this is, Rhonda forces her to continue.

81. Most concerning is that Plaintiff's children spend a large amount of time at Rhonda's home, and there have been multiple occasions where there is no adult supervision present when Duane Monnin visits, with only a 13-year-old cousin present to supervise the young children.

**### F. Systematic Fabrication of Evidence**

82. The court documents submitted demonstrate the extraordinary lengths to which the defendants have gone to manufacture a false narrative against Plaintiff.

83. The Guardian ad Litem (GAL) report, prepared by Laura A. Waymire who maintains an undisclosed personal relationship with Judge Julie Monnin, contains deliberately fabricated allegations designed to deprive Plaintiff of his parental rights.

84. The fabricated GAL report falsely portrays Plaintiff as having mental health issues and engaging in threatening behavior, when in

reality, Plaintiff has been the victim of a coordinated campaign to alienate him from his children and deprive him of his property.

85. Photographic evidence and screenshots provided by Plaintiff demonstrate the falsity of many allegations contained in the GAL report and other court filings.

86. The defendants have manipulated court records, including the creation of false accounts of law enforcement interactions, to construct a fictional narrative justifying the taking of Plaintiff's children and property.

87. Evidence provided by Plaintiff, including text messages, emails, and photographs, directly contradicts the fabricated narrative presented in court documents and demonstrates the coordinated effort to create false allegations against him.

**### G. Pattern of Judicial Misconduct**

88. Mr. Kinnett researched cases where Judge Julie Monnin acted as the presiding judge involving numerous family members, including Duane Monnin and multiple other close family members. There are many instances of this, even including Judge Julie Monnin presiding as the acting judge in a case where her own husband, Darrell Monnin, was a plaintiff. Under none of these circumstances did Judge Julie Monnin inform the courts on record or recuse herself. This establishes a clear pattern of failing to follow the law and is a direct violation of judicial canons.

89. Magistrate Morris proceeded without a signed magistrate consent form from all parties. When Mr. Kinnett became aware of the lack of consent form and made the court aware of this issue, Kristina Morris proceeded anyway, forcing Mr. Kinnett into trial.

90. When Mr. Kinnett challenged jurisdiction, Magistrate Morris stated "we're not going to deal with that right now," which was a clear violation of due process, as jurisdictional challenges must be addressed before a court can proceed.

### H. Obstruction of Access to the Courts

91. When Plaintiff attempted to address these conflicts of interest and other due process violations, court staff, including Jennifer Schoffner, deliberately obstructed his access to the courts.

92. As documented in Plaintiff's Motion for Recusal filed on June 18, 2024, court staff "purposely sent Mr. Kinnett on 'wild goose chases' and wasted his time in effort to prevent him from obtaining recordings of the motions as well as inhibited his ability to file motions in a timely fashion."

93. Plaintiff made numerous attempts over a three-week period to properly file an emergency ex parte motion for custody, which was finally filed properly on June 16, 2024, after repeated obstruction by court staff.

94. Multiple witnesses including Lance Francis and Ashley have experienced similar discrimination and obstruction from Defendants Schoffner and Mumford, establishing a pattern of discrimination affecting multiple victims since 2021.

### I. October 2023 Courthouse Incident - Enterprise Coordination Evidence

95. In early October 2023, a critical incident demonstrated the coordinated nature of the enterprise when Plaintiff arrived at the Shelby County Common Pleas Domestic Division courthouse for a hearing and discovered an unauthorized gathering of enterprise participants.

96. As Plaintiff climbed the stairs at the courthouse, he heard an unusually loud, celebratory gathering on the floor where his hearing was scheduled. Upon reaching the top of the stairs and turning the corner, he observed multiple enterprise participants engaged in what appeared to be a "class reunion" atmosphere, including:

a) Judge Julie Monnin (present outside her jurisdiction)

b) Magistrate Kristina K. Morris

c) Rhonda K. Dross (ex-wife's mother)

d) Jeff Thobe (ex-wife's stepfather)

e) Jennifer Schoffner (Clerk of Courts)

f) Ben Eberly (Plaintiff's own attorney)

g) Todd Severt

h) Laura E. Waymire (GAL)

i) Other court personnel

97. Upon noticing Plaintiff's arrival, the participants immediately fell silent and dispersed, demonstrating consciousness of impropriety and attempting to conceal their coordination.

98. This gathering evidenced pre-existing relationships between supposedly neutral parties, coordinated action among enterprise members, casual familiarity inappropriate to their official roles, deliberate concealment upon discovery, and improper ex parte communications about Plaintiff's case.

### J. Attorney Betrayal and Coercive Tactics (October 2023)

99. Immediately following the October 2023 courthouse "reunion" gathering, Defendant Ben Eberly, who had been hired and paid by Plaintiff as legal counsel, took Plaintiff into a conference room and engaged in a deliberate psychological assault lasting approximately one hour, including sustained verbal abuse, use of profanity directed at Plaintiff, name-calling and derogatory language, and aggressive provocations designed to make Plaintiff lose his temper.

100. During the same meeting, Eberly repeatedly attempted to coerce Plaintiff into accepting supervised visitation with his two youngest children. Upon Plaintiff's continued refusal, Eberly "lost his cool and snapped," issuing an explicit threat: "Well then I guess you won't get to see your children at all."

101. Eberly explicitly admitted his bad faith by declaring no concern for Plaintiff's children, stating that their welfare "wasn't his problem."

102. Throughout the meeting, Eberly engaged in "shuttle diplomacy" by repeatedly leaving the conference room, claiming to consult with Magistrate Morris and Todd Severt, returning each time with escalating pressure tactics, and demonstrating coordination with other enterprise members.

### K. Psychological Warfare and Attempted Detention (October 2023)

103. Following the failed coercion attempt by Eberly, as Plaintiff was attempting to leave the courthouse to escape the abusive situation, Defendant Rhonda Dross approached him in the hallway outside the courtroom and delivered a calculated psychological attack.

104. Dross specifically told Plaintiff that his "children were doing fine without their father," that they "did not miss their father," and that they "did not need him in their life" - statements that were deliberately false and calculated to cause maximum emotional damage.

105. As Plaintiff continued to make his way out of the courthouse, Judge Monnin ordered security guards to detain Plaintiff and hold him there so that she, Alisha Kinnett, Rhonda Dross, and Jeff Thobe could walk to their vehicles without his presence.

106. The way Judge Monnin spoke to the security guards was "like a master encouraging their attack dogs to proceed with violence," demonstrating an abuse of judicial authority and attempt at intimidation through force.

107. The security guards, recognizing that Plaintiff posed no threat and was merely attempting to retreat from a hostile situation, declined to execute the unlawful detention, allowing Plaintiff to exit the building.

### L. Malicious Prosecution and Business Destruction (August-September 2023)

108. On August 28, 2023, Plaintiff was wrongfully charged and incarcerated for obstruction of justice, a crime he did not commit and which was later dropped by the prosecutor.

109. Judge Carter violated Plaintiff's constitutional rights by denying due process in hearings, incarcerating Plaintiff for 10 days on charges that were later dismissed, and participating in an attempt to coerce Plaintiff into signing a plea bargain for a lesser charge of disorderly conduct.

110. When Judge Carter ordered Plaintiff's 10-day incarceration, Plaintiff explained in open court that he owned a business called "Do Good Aquatics" containing valuable live inventory of saltwater fish and coral colonies requiring specialized daily care and maintenance. Judge Carter deliberately ignored these legitimate business concerns.

111. As a direct and proximate result of this intentional business interference, during Plaintiff's 10-day incarceration:

a) 95% of the entire inventory of live saltwater fish and coral colonies died

b) Life support systems failed

c) Complete ecosystem collapse occurred

d) Over $50,000 in direct inventory loss

e) Years of cultivation destroyed

f) Breeding colonies eliminated

g) Specialized strain extinction

112. The business maintained interstate commerce through:

a) Online sales platforms reaching customers nationwide

b) Importation of specimens from Florida, California, Hawaii, and international sources

c) Interstate banking and payment processing systems

d) Shipping via FedEx, UPS, and USPS to customers in multiple states

e) Wholesale accounts with distributors in other states

f) Purchase of equipment and supplies from out-of-state vendors

113. Recovery attempts over the following months resulted in less than 5% recovery rate despite months of effort. The business is now projected to close permanently in 2025 due to unrecoverable losses.

**### M. Coercive Legal Representation**

114. Following Plaintiff's dismissal of Ben Eberly, Ralph Bauer was appointed as his public defender. From the outset, it was "absolutely clear that Ralph was handpicked by the courts to act as a second prosecutor, and not as [Plaintiff's] public defender or any sort of effective council."

115. Bauer maintained an undisclosed conflict of interest as he had previously unsuccessfully prosecuted Plaintiff's father while serving as Shelby County prosecutor and maintained a grudge against Plaintiff's deceased father (who passed away in 2012).

116. When Plaintiff attempted to dismiss Bauer as his counsel during a court proceeding, Judge Carter refused to allow Plaintiff to fire Ralph Bauer as his public defender and made it absolutely clear that Ralph was not going anywhere.

117. On day six of Plaintiff's 10-day wrongful incarceration, Bauer met with Plaintiff in the jail library in a pre-arranged meeting where he continued coercive tactics including threats that Plaintiff would "rot in jail."

118. On day seven of the incarceration, Bauer called to inform Plaintiff that the obstruction of justice charge had been dismissed. Despite this dismissal, Plaintiff was forced to complete the entire 10-day sentence, serving 3 additional days of unjustified detention.

**### N. Plaintiff's Attempts to Address the Conflicts Through Proper Channels**

119. On June 18, 2024, Plaintiff filed a detailed Motion for Recusal in the Shelby County Court of Common Pleas, specifically citing the relevant provisions of the Ohio Code of Judicial Conduct that required recusal.

120. Plaintiff's motion specifically cited:

- Canon 1 of the Ohio Code of Judicial Conduct

- Canon 2 of the Ohio Code of Judicial Conduct

- Rule 2.11(A) of the Ohio Code of Judicial Conduct

- In re: Disqualification of Corrigan, 110 Ohio St.3d 1217, 2005-Ohio-7153

121. The motion specifically stated: "Mr. Kinnett has not filed this motion with the intent of proving Judge Kristen Morris's bias, but rather to ask Judge Morris to recuse herself to remove the appearance of bias to the public."

122. Despite Plaintiff's proper invocation of the judicial ethics rules through his recusal motion, the court disregarded these well-founded concerns and continued to issue orders in proceedings tainted by these undisclosed conflicts of interest.

123. Plaintiff has exhausted all available remedies within the state court system, only to encounter further obstruction and bias, demonstrating that the state forum is incapable of providing the fair and impartial tribunal guaranteed by the Constitution.

**## V. THE RICO ENTERPRISE**

124. The Defendants collectively constitute an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c). The RICO enterprise consists of a network of individuals and entities associated in fact, although not a legal entity itself.

125. The enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage:

a) **A Core Group of directing members:**

- Judge Julie Monnin

- Alisha Kinnett

- Magistrate Kristina Morris

- Todd Severt

- Laura Waymire

- Rhonda K. Dross

who directed and controlled the enterprise's activities

**b) **Administrative Facilitators:****

- Jennifer L. Shoffner

- Michelle K. Mumford

- Court clerks

- Law firm staff

who facilitated the enterprise's operations

**c) **Enforcement Group:****

- Shelby County Sheriff's Office

- Versailles Police Department

- Dave Spicer

- Josh Bowlin

- Nathan Nolte

- Sheriff James R. Frye

who executed the enterprise's directives

d) **Professional Enablers:**

- Attorney defendants

- Law firms

- Guardian Ad Litem

who provided legal cover and legitimacy

126. The enterprise functions through an organized pattern of relationships, coordinated activities, and specific assigned roles among participants. It maintains continuity through the persistence of these relationships and the steady pursuit of its goals over time.

127. The enterprise engages in and affects interstate commerce by:

a) Using interstate mail and wire communications

b) Engaging in financial transactions across state lines

c) Affecting federal rights and protections

d) Interfering with interstate custody matters

e) Affecting businesses engaged in interstate commerce

f) Using interstate banking systems

g) Employing communication facilities in interstate commerce

h) Destroying Plaintiff's interstate business that conducted online sales nationally

i) Utilizing federal postal services for court filings and legal communications

j) Employing interstate electronic court filing systems

k) Using interstate telephone and internet services to coordinate activities

l) Affecting Plaintiff's ability to conduct interstate business

128. The defendants conducted or participated in the enterprise's affairs through a pattern of

racketeering activity consisting of:

**129. **Mail and Wire Fraud (18 U.S.C. §§ 1341, 1343):****

a) Filing false court documents via mail and electronic filing

b) Transmitting fraudulent orders across jurisdictions

c) Communicating via email and phone to coordinate illegal activities

d) Using electronic court systems to file false pleadings

e) Transmitting false financial information related to court proceedings

f) Using interstate communications to maintain the conspiracy

g) Misrepresenting facts in transmitted court documents

**130. **Obstruction of Justice (18 U.S.C. §§ 1503, 1512, 1519):****

a) Intimidating witnesses against the enterprise

b) Tampering with court records

c) Interfering with court proceedings

d) Corrupting judicial officers

e) Preventing reporting of criminal activities

f) Coercing false testimony

g) Retaliating against Plaintiff for seeking legal recourse

h) Court staff deliberately sending Plaintiff on "wild goose chases" to prevent him from filing motions and obtaining records

**131. **Extortion (18 U.S.C. § 1951):****

a) Threatening Plaintiff with loss of parental rights

b) Demanding compliance through threats of arrest

c) Using official position to obtain property and rights

d) Coercing false testimony and statements

e) Exploiting judicial power for personal gain

f) Forcing business losses through abuse of authority

g) Compelling settlements through threats

132. The pattern of racketeering activity includes specific predicate acts committed between 2021 and present:

**133. **Predicate Act 1 - August 2021:****

- Defendants Judge Monnin, Travis Fliehman and Alisha Kinnett used wire communications to coordinate false protection order proceedings, involving multiple interstate communications.

**134. **Predicate Act 2 - September 2021:****

- Defendants Judge Monnin, Alisha Kinnett, and Dave Spicer used interstate wire communications to coordinate the unlawful home invasion, involving multiple communications to plan and execute the raid.

**135. **Predicate Act 3 - January 2022:****

- Defendants transmitted fraudulent divorce documents through interstate mail and wire communications, concealing conflicts of interest.

**136. **Predicate Act 4 - October 2022:****

- Defendants transmitted fraudulent court filings through interstate mail and wire communications to secure emergency custody orders based on false allegations, concealing the unlawful entry and conflicts of interest.

137. **Predicate Act 5 - January 2023:**

- Defendants Magistrate Morris, Alisha Kinnett, and Laura Waymire used electronic court filing systems to submit false affidavits and reports via interstate wire transmissions, containing material misrepresentations about Plaintiff's fitness as a parent.

**138. **Predicate Act 6 - August 2023:****

- Enterprise members coordinated via interstate communications to orchestrate Plaintiff's false arrest and imprisonment, involving multiple wire communications between Judge Carter, Ralph Bauer, and other defendants.

**139. **Predicate Act 7 - September 2023:****

- Defendants Judge Carter and Ralph Bauer engaged in obstruction of justice by continuing Plaintiff's detention after charges were dismissed, coordinated through interstate wire communications.

- Defendants transmitted fraudulent documents affecting custody rights.

**140. **Predicate Act 8 - October 2023:****

- Enterprise members engaged in wire fraud and obstruction of justice during the courthouse "reunion" gathering, coordinating retaliatory actions across multiple jurisdictions via phone and email communications.

- Enterprise members engaged in wire fraud to coordinate retaliatory actions across multiple

jurisdictions.

**141. **Predicate Act 9 - December 2023:****

- Defendants used electronic court filing systems to submit false affidavits and orders affecting custody rights, containing material misrepresentations transmitted via interstate wire.

**142. **Predicate Act 10 - March 2024:****

- Enterprise members engaged in wire fraud to coordinate the complete denial of access between Plaintiff and his children, involving multiple interstate communications between defendants.

**143. **Predicate Act 11 - 2024-2025:****

- Defendants Matthew C. Sorg and Dungan and LeFevre engaged in wirefraud and mail fraud in attempting to seize Mr. Kinnett's adjoining property with agricultural building through fraudulent legal proceedings and interstate communications.

144. The enterprise engaged in financial fraud and exploitation through:

A. **Retirement Fund Manipulation:**

a) Defendants artificially inflated government retirement accounts

b) Judge Monnin, Magistrate Morris, and court officials received enhanced benefits

c) Clerk of Courts participated in financial misconduct for retirement gains

d) Officials manipulated case outcomes to protect retirement benefits

e) Pattern of decisions benefiting financial interests of court officials

**B. **Fraudulent Property Seizure Scheme:****

a) Judge Stephenson ordered unauthorized sheriff's sale of Plaintiff's primary residence

b) Defendants actively concealed sale proceedings from Plaintiff

c) Shelby County Common Pleas Court staff provided false information regarding status of property sale, effectiveness of Plaintiff's filed paperwork, and legal protections available to Plaintiff

d) Shelby County Sheriff's Department proceeded with sale despite pending legal challenges, improper notice, and valid opposition filings

e) Matthew C. Sorg and Dungan and LeFevre participated in attempts to seize additional property

145. The pattern of racketeering activity demonstrates:

a) Continuity - spanning from 2021 to present with no indication of cessation

b) Relationship between predicate acts - all aimed at separating Plaintiff from his children, destroying his business, and violating his constitutional rights

c) Common methods of commission - abuse of judicial process, fraudulent communications, intimidation

d) Similar participants - overlapping enterprise members in different combinations

e) Similar types of misconduct - mail fraud, wire fraud, obstruction of justice, and extortion

146. As a direct and proximate result of the RICO violations described above, Plaintiff has been injured in his business and property by the acts constituting violations of 18 U.S.C. § 1962,

including:

a) Destruction of his "Do Good Aquatics" business

b) Loss of inventory valued at over $50,000

c) Loss of business goodwill and customer relationships

d) Forced liquidation of business assets

e) Legal expenses and bail costs

f) Loss of income and earning capacity

g) Property damage from unlawful entry

h) Increased operational costs due to interference

i) Threatened loss of real property through fraudulent sheriff's sale

j) Attempted seizure of adjoining property with agricultural building

k) Loss of projected annual income of $75,000-$100,000 from destroyed business

l) Equipment losses valued at $20,000

m) Infrastructure damage to specialized aquarium systems

**## VI. DAMAGES**

147. As a direct and proximate result of Defendants' actions, Plaintiff has suffered the following specific damages:

**A. **Economic Damages:****

a) Business destruction: $50,000+ in inventory loss

b) Equipment and infrastructure: $20,000

c) Lost income (2023-2025): $225,000 (based on $75,000 annual average)

d) Lost future earnings: $750,000 (10 years projected)

e) Legal expenses: $25,000+

f) Bail and court costs: $5,000+

g) Property damage from unlawful entry: $2,500

h) Travel costs for supervised visitation: $5,000+

i) Therapy and counseling costs: $10,000+

B. **Non-Economic Damages:**

a) Loss of parent-child relationship

b) Severe emotional distress requiring treatment

c) PTSD from home invasion and ongoing harassment

d) Depression and anxiety disorders

e) Loss of reputation in community

f) Pain and suffering from forced separation from children

g) Humiliation and degradation

h) Loss of enjoyment of life

C. **Continuing Damages:**

a) Ongoing denial of parental rights

b) Continued interference with parent-child relationship

c) Persistent harassment and surveillance

d) Ongoing reputational harm

e) Continued economic losses from business destruction

**## VII. CAUSES OF ACTION**

**### FIRST CAUSE OF ACTION**

**#### Violation of Civil Rights Under 42 U.S.C. § 1983 - Due Process Violations**

**##### (Against All Defendants)**

148. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

149. All Defendants, acting under color of state law and in concert with each other, deprived Plaintiff of his right to procedural and substantive due process secured by the Fourteenth Amendment to the United States Constitution.

150. Defendants' due process violations included:

a) Biased decision-making by judicial defendants with undisclosed conflicts of interest

b) Ex parte communications affecting Plaintiff's cases

c) Denial of meaningful opportunity to be heard in custody proceedings

d) Arbitrary restrictions on parental rights without evidentiary basis

e) Deprivation of property through deliberate action causing business destruction

f) Forced representation by conflicted counsel hostile to Plaintiff's interests

g) Unlawful detention after charges were dismissed

h) Manipulation of court records and procedures

i) Deliberate fabrication of evidence

j) Systematic obstruction of access to courts

k) Denial of fair and impartial tribunal

l) Proceeding without proper consent forms

m) Refusing to address jurisdictional challenges

151. The actions of Judge Monnin and Magistrate Morris violated clearly established law on judicial neutrality. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *In re Murchison*, 349 U.S. 133 (1955); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Tumey v. Ohio*, 273 U.S. 510 (1927).

152. As a direct and proximate result of Defendants' violations of Plaintiff's due process rights, Plaintiff has suffered and continues to suffer:

a) Loss of relationship with his children

b) Severe emotional distress

c) Damage to his reputation

d) Economic losses exceeding $50,000

e) Ongoing psychological trauma

f) Deprivation of fundamental liberty interests

153. Defendants' conduct was willful, malicious, oppressive, and/or reckless, and was of such nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

**### SECOND CAUSE OF ACTION**

**#### Violation of Civil Rights Under 42 U.S.C. § 1983 - First Amendment Right to Familial Association**

**##### (Against All Defendants)**

154. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

155. All Defendants, acting under color of state law and in concert with each other, deprived Plaintiff of his First Amendment right to intimate association with his children.

156. Defendants' violations included:

a) Physical separation from his youngest children for extended periods

b) Severe and arbitrary restrictions on communication (currently limited to one 30-minute call per week)

c) Deliberate interference with scheduled communications

d) Prevention of participation in significant family events

e) Systematic obstruction of parent-child relationship

f) Complete denial of in-person access since February 2025

g) Systematic parental alienation

157. These restrictions were not narrowly tailored to serve any compelling governmental interest and were motivated by personal animus rather than legitimate child welfare concerns.

158. The Supreme Court has recognized the First Amendment protects the right to intimate association, including family relationships. See *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619-20 (1984); *Troxel v. Granville*, 530 U.S. 57 (2000); *Stanley v. Illinois*, 405 U.S. 645 (1972).

159. As a direct and proximate result of Defendants' violations, Plaintiff has suffered severe emotional distress, loss of relationship with his children, damage to parent-child bonds, and ongoing psychological trauma.

**### THIRD CAUSE OF ACTION**

**#### Violation of Civil Rights Under 42 U.S.C. § 1983 - Fourth Amendment Violations**

**##### (Against Law Enforcement Defendants)**

160. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

161. Law Enforcement Defendants violated Plaintiff's Fourth Amendment rights against unreasonable searches and seizures when they:

a) Entered Plaintiff's home without a valid warrant in September 2021

b) Relied on consent from Plaintiff's ex-wife who they knew did not reside at the residence

c) Forcibly removed an air conditioning unit to gain entry

d) Entered with weapons drawn despite knowing children were present

e) Used excessive force in the presence of children

f) Engaged in pattern of warrantless property searches and surveillance

(2021-present)

162. These actions violated clearly established Fourth Amendment law. See *Payton v. New York*, 445 U.S. 573 (1980); *Georgia v. Randolph*, 547 U.S. 103 (2006); *Graham v. Connor*, 490 U.S. 386 (1989).

163. As a direct and proximate result of Defendants' Fourth Amendment violations, Plaintiff has suffered severe emotional distress, psychological trauma, property damage, and loss of sense of security in his home.

**### FOURTH CAUSE OF ACTION**

**#### Violation of Civil Rights Under 42 U.S.C. § 1983 - Equal Protection Violations**

**##### (Against All Defendants)**

164. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

165. All Defendants violated Plaintiff's right to equal protection by treating him differently from similarly situated persons without rational basis, including:

a) Preferential treatment for Defendant Alisha Kinnett due to her familial relationship with Judge Monnin

b) Discriminatory enforcement of custody and visitation orders

c) Disparate application of legal standards based on personal relationships

d) Selective enforcement of laws against Plaintiff

166. These actions were not rationally related to any legitimate government interest and violated clearly established equal protection law. See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985).

**### FIFTH CAUSE OF ACTION**

#### Conspiracy to Violate Civil Rights Under 42 U.S.C. § 1983

##### (Against All Defendants)

167. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

168. All Defendants reached an agreement amongst themselves to deprive Plaintiff of his constitutional rights and took numerous overt acts in furtherance of the conspiracy, including:

a) The October 2023 courthouse "reunion" gathering

b) Coordination across agencies and jurisdictions

c) Sharing confidential information

d) Ex parte communications about Plaintiff's cases

e) Fabrication of evidence against Plaintiff

f) Orchestration of false arrests

g) Manipulation of court proceedings

h) Deliberate business destruction

169. This civil conspiracy has directly and proximately caused the violations of Plaintiff's constitutional rights. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Dennis v. Sparks*, 449 U.S. 24 (1980); *United States v. Price*, 383 U.S. 787 (1966).

### SIXTH CAUSE OF ACTION

#### Conspiracy to Obstruct Justice Under 42 U.S.C. § 1985(2)

##### (Against All Defendants)

170. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

171. Defendants conspired to obstruct justice in state and federal courts through intimidation of parties, witnesses, and jurors, in violation of 42 U.S.C. § 1985(2).

172. Defendants' conspiracy included:

a) Intimidating Plaintiff from pursuing legal remedies

b) Obstructing access to court records and filings

c) Manipulating court proceedings through ex parte communications

d) Threatening witnesses who might support Plaintiff

e) Corrupting judicial proceedings through undisclosed relationships

173. As a direct result, Plaintiff has been denied equal protection of the laws and access to courts.

### SEVENTH CAUSE OF ACTION

#### Monell Municipal Liability

##### (Against Governmental Entity Defendants)

174. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

175. The governmental entity defendants maintained policies, practices, or customs that were the moving force behind the violations of Plaintiff's constitutional rights, including:

a) Failure to train employees regarding conflicts of interest

b) Failure to supervise employees and officials regarding constitutional rights

c) Failure to investigate misconduct against politically connected individuals

d) Tolerance of unconstitutional behavior by employees

e) Deliberate indifference to violations of citizens' rights

f) Customs allowing nepotism to influence official actions

g) Failure to implement adequate screening procedures for conflicts

h) Pattern of ignoring complaints about judicial misconduct

i) Custom of permitting ex parte communications

j) Practice of obstructing pro se litigants' access to courts

176. These policies reflect deliberate indifference to constitutional rights and were the moving force behind the violations alleged. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997).

**### EIGHTH CAUSE OF ACTION**

**#### Violations of RICO, 18 U.S.C. § 1962(c)**

**##### (Against All Defendants)**

177. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

178. The Defendants, being persons employed by and associated with the enterprise engaged in, and the activities of which affect, interstate and foreign commerce, did conduct and participate, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

179. As detailed above, the Defendants engaged in a pattern of racketeering activity including multiple acts of mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C.
§§ 1503, 1512), and extortion (18 U.S.C. § 1951).

180. Judge Carter's deliberate actions causing the destruction of Plaintiff's business during his wrongful incarceration demonstrate a direct causal connection between the RICO violations and Plaintiff's business injuries. See *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258 (1992); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

181. As a direct and proximate result of the Defendants' racketeering activities, Plaintiff has been injured in his business and property, including:

a) Destruction of his "Do Good Aquatics" business

b) Loss of inventory valued at over $50,000

c) Loss of business goodwill

d) Forced liquidation of assets

e) Legal expenses and bail costs

f) Loss of income and earning capacity

g) Property damage

h) Threatened loss of real property

i) Attempted seizure of adjoining property

**### NINTH CAUSE OF ACTION**

**#### Conspiracy to Violate RICO, 18 U.S.C. § 1962(d)**

**##### (Against All Defendants)**

182. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

183. The Defendants have unlawfully, knowingly, and willfully combined, conspired, confederated, and agreed together to violate 18 U.S.C. § 1962(c) as described above, in violation of 18 U.S.C. § 1962(d).

184. The Defendants knew about and agreed to facilitate the enterprise's scheme to engage in the pattern of racketeering activity described above, as evidenced by their coordinated actions, the October 2023 courthouse gathering, and the systematic pattern of adverse actions against Plaintiff.

185. Each Defendant agreed to commit at least two predicate acts in furtherance of the conspiracy. See *Salinas v. United States*, 522 U.S. 52 (1997); *Beck v. Prupis*, 529 U.S. 494 (2000).

### TENTH CAUSE OF ACTION

#### Intentional Infliction of Emotional Distress

##### (Against All Defendants)

186. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

187. Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff, including:

a) Traumatic separation from his children

b) Witnessing his children's terror during the unlawful home invasion

c) Subjection to false imprisonment

d) Destruction of his business and livelihood

e) Verbal abuse and humiliation by his own attorney

f) Psychological warfare from Defendant Dross

g) Systematic alienation from his children through parental alienation

h) Forced interaction between vulnerable family members and their abusers

188. The conduct was so extreme and outrageous as to exceed all bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community.

189. As a direct and proximate result, Plaintiff has suffered severe emotional distress including anxiety, depression, sleep disturbances, psychological trauma, and ongoing psychological harm.

**### ELEVENTH CAUSE OF ACTION**

**#### Abuse of Process**

**##### (Against All Defendants)**

190. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

191. Defendants misused and perverted legal processes for purposes other than their intended use, including:

a) Filing false criminal charges

b) Using detention to coerce plea bargains

c) Manipulating custody proceedings based on nepotism

d) Fabricating evidence for court proceedings

e) Using judicial authority to pursue personal vendettas

f) Exploiting court processes to separate Plaintiff from his children

192. Defendants had an ulterior purpose in using these legal processes other than resolving the subject matter for which the processes were designed.

193. As a direct and proximate result of Defendants' abuse of process, Plaintiff has suffered severe emotional distress, loss of relationship with his children, damage to his reputation, economic losses, and business destruction.

**### TWELFTH CAUSE OF ACTION**

**#### Professional Negligence and Breach of Fiduciary Duty**

**##### (Against Attorney and Guardian Ad Litem Defendants)**

194. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

195. The attorney defendants and Guardian Ad Litem defendant owed professional duties of care and fiduciary duties to Plaintiff and/or Plaintiff's children.

196. These defendants breached their professional and fiduciary duties by:

a) Providing deliberately ineffective representation

b) Maintaining undisclosed conflicts of interest

c) Verbally abusing clients

d) Participating in ex parte communications against client interests

e) Actively working against client objectives

f) Failing to investigate allegations affecting children's welfare, including exposure to known sexual predators

g) Ignoring child safety concerns while fabricating allegations against protective parent

197. As a direct and proximate result of these breaches, Plaintiff has suffered damages including loss of effective representation, adverse legal outcomes, loss of relationship with his children, and economic losses.

### THIRTEENTH CAUSE OF ACTION

#### Tortious Interference with Parental Rights

##### (Against All Defendants)

198. Plaintiff incorporates by reference all preceding paragraphs of this Complaint.

199. Defendants intentionally interfered with Plaintiff's established parental rights by:

a) Orchestrating physical separation from his children

b) Severely restricting communication to one 30-minute call per week

c) Sabotaging scheduled communications

d) Preventing attendance at significant family events

e) Manipulating custody proceedings through conflicts of interest

f) Fabricating grounds for limiting parental contact

g) Systematic parental alienation

h) Complete denial of in-person visitation since February 2025

200. This interference was not justified by any legitimate child welfare concern but was motivated by personal animus, nepotism, and the enterprise's coordinated goals.

201. As a direct and proximate result of Defendants' interference, Plaintiff has suffered damages including loss of relationship with his children, damage to parent-child bonds, and severe emotional distress.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dustin M. Kinnett respectfully requests that this Court:

A. Assume jurisdiction over this action;

B. Initiate an immediate investigation into the fabrication of evidence in Plaintiff's state court proceedings, including ordering the preservation of all drafts, communications, and other evidence related to the creation of the fraudulent GAL report;

C. Declare that Defendants' actions violated Plaintiff's constitutional rights, including his:

1. First Amendment right to familial association

2. Fourth Amendment right against unreasonable searches and seizures

3. Sixth Amendment right to effective assistance of counsel

4. Fourteenth Amendment rights to due process and equal protection

D. Declare that Judge Julie Monnin's undisclosed familial relationshipwith Alisha K. Kinnett (as her aunt) and her pattern of presiding overcases involving family members without disclosure or recusal createddisqualifying conflicts of interest requiring recusal under bothconstitutional due process principles and the Ohio Code of Judicial
Conduct;

E. Declare that GAL Laura Waymire's personal and professional relationship with Judge Julie

Monnin created a disqualifying conflict of interest that tainted all proceedings in which she participated;

F. Declare that Magistrate Morris's proceeding without proper consent forms and refusing to address jurisdictional challenges violated due process;

G. Declare void all orders issued in proceedings tainted by these undisclosed conflicts of interest and arising from corrupt proceedings lacking in due process;

H. Issue preliminary and permanent injunctions:

**1. Restoring Plaintiff's parental rights!**

2. Prohibiting Magistrate Morris from continuing to interfere with Plaintiff's parental rights through instructions to schools and other third parties

3. Prohibiting any action to enforce orders arising from these corrupt proceedings, including the immediate stay of any action to seize or sell Plaintiff's property

4. Requiring the immediate removal of all parties with conflicts of interest from any involvement in Plaintiff's domestic relations proceedings

5. Removing conflicted judicial officers from cases involving Plaintiff

6. Preventing further constitutional violations

7. Requiring proper investigation of any allegations affecting custody, including concerns about children's exposure to Duane Monnin

8. Mandating ethical compliance in proceedings involving Plaintiff

9. Alowing Mr. Kinnett to protect his children.

10. Prohibiting ex parte communications regarding Plaintiff's cases

11. Requiring disclosure of conflicts of interest

12. Appointing a federal monitor to oversee compliance with court orders

13. Requiring defendants to undergo training on constitutional rights

I. Order the immediate disclosure of all ex parte communications between and among Judge Monnin, Magistrate Morris, GAL Waymire, attorney Severt, and other participants in the conspiracy;

J. Appoint a special master to oversee the reconstitution of Plaintiff's domestic relations proceedings with neutral judicial officers and court-appointed officials from outside Shelby and Darke Counties;

K. Order a full investigation by the U.S. Department of Justice Civil Rights Division into the extent of coordination between Judge Monnin, Magistrate Morris, GAL Waymire, and other participants in the corrupt enterprise;

L. Issue injunctive relief requiring a truly independent evaluation of Plaintiff's children's best interests by individuals with no connection to the corrupt enterprise operating in the Shelby and Darke County courts;

M. Award compensatory damages against all Defendants, jointly and severally, in an amount to be determined at trial, but not less than $10,000,000, for:

1. Emotional distress

2. Loss of relationship with children

3. Business destruction

4. Property damage

5. Economic losses

6. Damage to reputation

7. Pain and suffering

8. Loss of income and earning capacity

9. Medical and therapy expenses

N. Award treble damages for violations of RICO pursuant to 18 U.S.C. § 1964(c), in an amount to be determined at trial, but not less than $30,000,000;

O. Award punitive damages against the Defendants in their individual capacities in an amount to be determined at trial, but not less than $10,000,000, to punish their willful, malicious, oppressive, and/or reckless conduct and to deter the future fabrication of evidence against citizens;

P. Award pre-judgment and post-judgment interest;

Q. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c);

R. Refer evidence of criminal conduct to:

1. The U.S. Attorney for the Southern District of Ohio

2. The FBI's Public Corruption Unit

3. The U.S. Department of Justice Civil Rights Division

4. Appropriate federal law enforcement agencies for investigation of perjury, subornation of perjury, obstruction of justice, civil rights violations, and child endangerment;

S. Issue any necessary orders to protect Plaintiff and his children from retaliation;

T. Grant such other and further relief as this Court deems just and proper.

## IX. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## X. VERIFICATION

I, Dustin M. Kinnett, declare under penalty of perjury that:

1. I am the Plaintiff in this action.

2. I have read the foregoing Verified Complaint and know its contents.

3. The matters stated in the Verified Complaint are true of my own knowledge, except as to those matters stated on information and belief, and as to those matters, I believe them to be true.

4. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 6-6 2025 in Shelby County, Ohio.

________________________

DUSTIN M. KINNETT, Plaintiff Pro Se

U.C.C. 1-308

19411 Pence Rd.

Maplewood, OH 45340

(937) 722-7314

## XI. CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

1. Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

2. Is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

3. The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

4. The complaint otherwise complies with the requirements of Rule 11.

I further certify that I have documentary evidence supporting the allegations in this complaint, including but not limited to audio recordings, photographs, text messages, emails, court documents, and other materials that will be produced during discovery.

Dated: 6-6-, 2025

Respectfully submitted,

DUSTIN M. KINNETT

Plaintiff Pro Se

U.C.C. 1-308

19411 Pence Rd.

Maplewood, OH 45340

(937) 722-7314